## Fidelity Trust Company v. Abram Poole.

### Gen. No. 12,786.

1. AGENT—*form of action where guilty of breach of duty.* For the breach of a duty an agent owes to his principal, the action may be in assumpsit for the breach of the implied promise, or in case for the breach of the implied duty.

2. PRINCIPAL AND AGENT—*extent of authority under power of sale.* An agent authorized to sell cannot, without the knowledge or consent of the principal, become the purchaser of the property he is authorized to sell.

3. PRINCIPAL AND AGENT—*right of former to repudiate unauthorized sale.* If a trust company authorized to sell make a sale to itself, or to one of its officers, the principal, upon learning the facts, is entitled to repudiate the transaction.

4. TRUST COMPANY—*when sale by, constitutes breach of trust.* A trust company authorized to settle or compromise a money demand is guilty of a breach of trust if it sells such demand to one of its own officers who is acting upon the opinion, uncommunicated to the client of such trust company, that a greater sum can be realized upon such demand than that which was being paid therefor.

Assumpsit. Appeal from the Circuit Court of Cook County; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed October 4, 1907.

**Statement by the Court.** This is an appeal by the defendant, the Fidelity Trust Company, of Kansas City, Mo., from a judgment of $942.65, recovered against it by the plaintiff, Abram Poole, a resident of Chicago, in an action of assumpsit which was tried by the court.

In 1896, plaintiff, the holder of a note made by Herst and wife, and of a mortgage given to secure the same on certain lands in Sumner county, Kansas, employed the Concordia Trust Company of Kansas City to foreclose said mortgage. Through foreclosure proceedings said mortgaged premises

were sold to plaintiff and he obtained in 1897, in the District Court of Sumner county, Kansas, a deficiency judgment against Herst and wife, upon which there was due in January, 1902, $1,630.13. Some time before 1901, the defendant succeeded to the business of the Concordia Company. In 1901 and 1902, Flower, Peters and Bowersock were the attorneys of the defendant in charge of its law department. M. B. Proctor was employed by them to look after the business of said department and one Comstock was the secretary of the defendant.

In February, 1901, the defendant began a correspondence with plaintiff in reference to the collection of the deficiency judgment against the Hersts, which continued up to February, 1902. The correspondence appears to have been carried on for the defendant and in its name by Proctor. During the same time Flower, Peters and Bowersock carried on with Herst and with Crooker, his attorney, a correspondence in relation to the collection or settlement of Poole's judgment against Herst. This correspondence appears also to have been carried on by Proctor, for his employers, Flower, Peters and Bowersock, in their name.

The correspondence between defendant and plaintiff was in substance as follows. In the letter of February 28, 1901, defendant advised plaintiff that an attorney in Sumner county had offered to undertake the collection of the Herst judgment for fifty per cent of the amount collected, plaintiff to pay the costs. April 4, 1901, defendant wrote plaintiff that his offer to sell the Herst judgment for $450 had been submitted and declined. April 16th, defendant wrote plaintiff that it was informed that Herst owned land in Harper county and advised filing a transcript of a judgment in that county, so as to make it a lien on Herst's property there. April 29th, plaintiff wrote defendant asking, "In case you collect anything through Herst judgment what will be your charges?" May 1st, defendant answered as follows: "It is difficult to name any charge in advance for collecting this judgment. If you leave the case with us we will not make any charge for filing judgment in Harper county unless we

have to employ an attorney to attend to it. If we do anything further we will only make such charge as the work will be reasonably worth." May 3rd, plaintiff wrote defendant, "You may file the judgment against Herst." June 20th, defendant wrote plaintiff that the transcript had been filed in Harper county and execution issued, and asked plaintiff to remit costs $6.40. June 21st, plaintiff sent defendant the $6.40 costs. July 6th, defendant wrote plaintiff that their Kansas attorney thought the judgment collectible, that another attorney in Kansas said he could collect the judgment, that his fee would be $150 or $175, or a contingent fee of thirty-five to forty per cent, and that Herst would pay $125 for a release. July 8th, plaintiff wrote defendant, declining Herst's offer. November 25th, defendant wrote plaintiff that Herst had paid $300 for the release of another deficiency judgment of about a thousand dollars, that their attorney at Anthony, Kansas, was about to leave the State and, "If you care to set a price on the judgment we will secure a new attorney at Anthony and see what can be done toward enforcing collection of the full amount." November 26th, plaintiff wrote defendant as follows: "Replying to your letter of the 25th, will sell the Herst judgment for $500." December 5th, defendant wrote plaintiff, "Our Kansas City attorneys have written Herst's attorney submitting your offer for $500 in settlement. Herst's attorney replied, stating that he would take the matter up and write us soon." December 10th, defendant wrote plaintiff, "Our attorneys have secured from Mr. Herst an offer to pay $300 in settlement of the deficiency judgment. We are inclined to think that Herst will do better than this, but we would like to have your instructions as to whether or not to accept." December 12th, plaintiff wrote defendant, "My judgment against Herst is now over $1,000. * * * I have offered to take one-half of my debt if he will promptly settle. If they do not accept this offer, withdraw it and collect the entire amount." December 19th, defendant wrote plaintiff, "Herst's attorney says he will be unable to pay more than $300. We have therefore withdrawn your proposition of settlement, are en-

deavoring to arrange with a new attorney in Anthony to represent us. The idea of our Kansas City attorneys is that you should first have execution issued on your judgment and have the execution levied on the three pieces of property standing in Herst's name, and that the equities be sold on execution, bid in by you and prior mortgages on the land paid off by you"; to which plaintiff replied December 20th, that he was unwilling to buy the other mortgages and would wait until defendant heard from the other attorney. December 26th, defendant wrote plaintiff that their local attorney considered the judgment collectible, that it was hard to name a fee in advance, as he did not know to what extent the case might extend, and, "would prefer to undertake the business with an understanding that fair and reasonable fees be paid for the work actually done." December 28th, the plaintiff wrote defendant, "If your last report of the tangible property of Mr. Herst is correct, I cannot see as I am any better with a new attorney. If he has nothing but some real estate which I must foreclose and pay off three mortgages to get possession of, I better take his cash offer of $300 and be done with it, rather than go to the trouble, expense and long delay of law. I do not want the property or the bother, and the expense I know something about. I would ask him what he knows about Herst's property and of what it consists. There is no hurry to crowd the judgment." January 9, 1902, defendant wrote plaintiff, "We at once wrote our attorney and have been unable to get any trace of any property other than the real estate mentioned, which is encumbered to the extent of $3,900 and interest. If you are unwilling to buy in the equities in those properties it seems to me that it would be advisable to accept $300 for your judgment. Herst positively refuses to pay any more. If you authorize us to settle for $300 we will at once prepare and send you the necessary papers to be executed." To this plaintiff replied January 10th, "Yours of 9th at hand. In reply would say you may settle the judgment of Herst so as to net me $300." January 11th, defendant wrote plaintiff, "We enclose herewith assignment of the Herst deficiency judgment,

which please execute and acknowledge and return to us. We
will then collect the $300 and remit." January 15th, de-
fendant wrote plaintiff, "We acknowledge receipt of assign-
ment of judgment in the Herst case, but find that you filled
in the name of the purchaser as the Fidelity Trust Com-
pany. The assignment is not to be made to the Fidelity
Trust Company, and is left in blank because we do not know
in whose name the assignment is to be made. We have
therefore prepared a new assignment, which we enclose you
herewith for execution." January 16th, plaintiff returned
the new assignment, executed. January 18th, defendant
wrote plaintiff, "We acknowledge receipt of yours of 16th,
enclosing assignment of deficiency judgment in the Herst
case. We hope to collect the amount due you and make re-
mittance within two or three days. We herewith return the
old assignment, duly cancelled." January 27th, defendant
wrote plaintiff, "We enclose herewith draft on Chicago for
$300 in payment of assignment of deficiency judgment in
the Herst case," to which plaintiff replied January 29th,
"Received your draft for $300 to pay the assignment in the-
Herst deficiency judgment."

In their letter to Herst of June 26, 1901, Flower, Peters
and Bowersock advise Herst of the filing of a transcript of
Poole's judgment in Harper county and ask him to make a
proposition which they could submit to their client. In a
letter to Crooker of August 15th, they again mention Poole
as their client. December 3, 1901, they wrote Crooker as
follows:

"We have again taken up with Mr. Poole the matter of his
judgment against David F. Herst and wife. He now re-
quests us, before beginning proceedings, to submit to you the
proposition to settle the deficiency for $500."

Crooker's answer to this letter, addressed to said firm,
contains Herst's proposition to pay $300 in settlement of
the judgment. December 14th, said firm wrote Crooker
that they had submitted his proposition to Poole, and that
he declined to accept it. December 19th they wrote Crooker

that by authority of Mr. Poole they withdrew his proposition to settle for $500.

Proctor testified that after he had written the letter on January 9, 1902, and before he wrote that of January 11th, Comstock, the secretary of the company, asked him to get an assignment of the judgment to him, Comstock, and that when the blank assignment came Comstock's name was filled in as the assignee. Comstock testified that his attention was called to the judgment early in January, 1902, by seeing a letter from plaintiff; that Proctor told him he had advised Poole to press the judgment; that he thought a better settlement could be forced by levying an execution; that after looking over the correspondence he agreed with Proctor and called Mr. Flower's attention to it, and asked his approval of the purchase of the judgment by the defendant; that Mr. Flower declined to approve of such purchase and witness then decided to buy, and did buy the judgment, paying therefor $300. Comstock took out an execution in Harper county and levied it upon Herst's lands in that county. Herst then offered $500 to settle, afterwards went to Kansas City and offered $1,000. Early in May, 1902, a settlement was arranged between the local attorneys in Kansas of Herst and of Comstock at $1,300 and the costs on the execution, $500 to be paid at once and $800 in 40 days from April 15th. The payments were made and the judgment satisfied May 17, 1902.

April 5, 1902, before the settlement between Comstock and Herst was made or agreed upon, plaintiff, by his attorney, wrote defendant withdrawing his acceptance of the proposal to settle the Herst judgment for $300, and offering to return to defendant the money paid to him. April 25, 1902, still before the settlement between Herst and Comstock was made or agreed upon, plaintiff made a tender to defendant and also to Comstock of the $300 paid by defendant to plaintiff, with interest, and both refused to accept the money so tendered.

The declaration consists of the common counts for money had and received, etc., and of certain special counts. The

last special count avers: that on the 23rd of January, 1897, plaintiff recovered a judgment against Lucinda J. Herst and David F. Herst in the 19th Judicial Circuit of the State of Kansas in the sum of $2,165 and costs of suit and interest. That on January 10th, 1902, the sum of $1,600 deficiency was due on said judgment. That in 1901 and during the month of January, 1902, defendant was acting as agent for the plaintiff in obtaining and imparting to plaintiff information as to said David F. Herst as to the collection or settlement of said judgment and negotiating with Herst for the purpose of effecting a collection or settlement. That on January 10, 1902, plaintiff authorized defendant as his agent, to settle said judgment with judgment debtors, or one of them so as to net plaintiff $300. That on January 16, at defendant's request and for the purpose of enabling the defendant to settle the judgment, which purpose defendant then knew, plaintiff sent to defendant an assignment of the judgment with the name of the assignee left in blank at defendant's request.

That defendant pretended that said instrument in writing was necessary to enable defendant to effect a settlement of said judgment and defendant would use said written instrument for the purpose of effecting said settlement. That in consideration thereof defendant promised it would act as the agent of plaintiff and obey instructions and discharge its duties in reference to the matters pertaining to said agency, but defendant did not use the instrument for the purpose of effecting a settlement of the judgment, but in violation of its duty, as agent of the plaintiff and without the knowledge or consent of the plaintiff and for the purpose of selling said judgment to one William F. Comstock, inserted the name of Comstock in said instrument as assignee and delivered said written instrument to Comstock and thereupon abandoned its agency and surrendered to said Comstock its control over said instrument and permitted him to hold himself out as the owner of said judgment and deal with same as if it were his own.

Defendant did not inform plaintiff of the disposition it

had made of said instrument, and plaintiff did not learn thereof until in April, 1902. That as soon as plaintiff learned that the written instrument had been disposed of as aforesaid, and while plaintiff was the real owner of said judgment and before any settlement had been effected with judgment debtors or either of them, plaintiff revoked the authority of defendant to settle said judgment and to act as agent in reference thereto and demanded that defendant return to him the said written instrument and reassign said judgment, but defendant refused to return the instrument and refused to have the judgment reassigned to plaintiff. That said Comstock was at all the times mentioned an officer of defendant and its secretary, and as secretary obtained full information as to the authority which plaintiff had invested defendant with and was aware and chargeable with notice thereof prior to the delivery of said instrument to him as aforesaid, but that by reason of defendant's breach of duty this plaintiff was deprived of the evidence of ownership of said judgment and prevented from dealing with it and collecting or settling said judgment and Comstock was thereby enabled to and did settle said judgment and collected a large sum of money, to-wit, the sum of $1,300 and thereupon satisfied said judgment. And by reason of the matters and things before set forth the plaintiff has suffered damage in the sum of $2,000 and brings this suit, etc.

TAYLOR & MARTIN, for appellant; A. A. McCLANAHAN, of counsel.

JOHN V. NORCROSS, for appellee.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

For a breach of the duty an agent owes to his principal, the action may be in *assumpsit* for the breach of the implied promise, or in *case* for the breach of the implied duty.

The letters written by defendant to plaintiff are such as an attorney for the plaintiff, entrusted by him with the collec-

tion or settlement of the Herst judgment, might be expected to write to his client. In them the defendant gives legal advice to the plaintiff, submits to him propositions of settlement received from Herst, and Herst's answers to plaintiff's offers of settlement. In their letters to Herst and to his attorney, the attorneys of the defendant, in charge of the legal department of the defendant, repeatedly speak of the plaintiff as their client, and their letters are such as they might be expected to write as the attorneys of the plaintiff. Why the letters of defendant to plaintiff should have been written in the name of the defendant and the letters of the defendant's attorneys to Herst and his attorneys should have been written in the name of the attorneys of defendant, when all the letters were written by the same person and relate to the same subject, does not appear.

The defendant, a corporation, was not, perhaps, the attorney of the plaintiff, but it maintained a law department and assumed, as the agent of the plaintiff, to take charge of the collection or settlement of his judgment against the Hersts. It cannot be heard to say, in the face of the evidence in this record, that it was a mere gratuitous agent of the plaintiff and liable to him only for gross negligence or wilful and malicious fraud. It owed to him the duty to be loyal to its trust. It might not put itself into such relations that its interests became antagonistic to those of its principal.

Its authority was, we think, only to settle the judgment with the Hersts, but if it be conceded that it had authority to sell the judgment to a third person, its position is not, by such concession, made stronger. It did not profess to act for itself in the purchase of the judgment. It undertook to settle the judgment for the plaintiff, or to sell the judgment for the plaintiff, and in either case, it was the agent of the plaintiff. An agent authorized to sell cannot, without the knowledge or consent of the principal, become the purchaser of the property he is authorized to sell. This principle is a rule of universal application to all persons coming within its principle which is: that no person can be permitted to purchase an interest where he has a duty to perform incon-

Fidelity Trust Co. v. Poole.

sistent with the character of a purchaser. This principle applies not only to the agent, but to sub-agents, clerks or assistants employed by the agent. Mechem on Agency, section 463. It applies in this case to the purchase by Comstock, the secretary of the defendant corporation. A corporation acts through its officers and agents, and where a corporation acts as agent it is the duty of its officers and agents to be loyal to the trust reposed in the corporation. Comstock formed the opinion from an examination of the correspondence in the possession of defendant that more than $300 might be obtained from the Hersts. In place of communicating this opinion to the plaintiff, or openly making an offer to plaintiff to buy the judgment, he, the secretary of a corporation which was the agent of the plaintiff, proceeded secretly to secure from the plaintiff an assignment of the judgment to himself.

We think the plaintiff had the right, under the facts and circumstances shown by the evidence, when he learned that Comstock's name had been filled in the assignment of the judgment as assignee, to repudiate the transaction, and he did repudiate it so soon as that fact came to his knowledge.

It was through the wrongful act, through a breach of duty on the part of the defendant, that plaintiff lost control, and Comstock obtained control of plaintiff's judgment against the Hersts. Through such wrongful act of the defendant, Comstock obtained from the Hersts $1,300. The trial court permitted the defendant to deduct from that amount the costs and expenses, including attorneys' fees paid by Comstock, and for the balance, with interest, rendered judgment.

We think the judgment of the Circuit Court works out substantial justice between the parties, and that the record is free from reversible error.

The judgment of the Circuit Court will therefore be affirmed.

*Affirmed.*